**UNITED STATES COURT OF APPEALS**

**August 26, 2011**

**TENTH CIRCUIT**

JAMES WILLIAM SARGENT,

      Petitioner-Appellant,

v.

JAMES RUDEK,

      Respondent-Appellee.

No. 11-6156
(D.C. No. 10-cv-01231)
(W.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **EBEL** and **GORSUCH**, Circuit Judges.

      James Sargent, an Oklahoma prisoner proceeding pro se, seeks a Certificate of

Appealability (COA) to appeal the district court's dismissal of his 28 U.S.C. § 2254

petition. We grant Sargent permission to proceed in forma pauperis (IFP) but deny a

COA and dismiss this appeal.

---

      [*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

In the early morning hours of March 19, 2008, Pama Yarbrough left her rural home to go to work in Drumright, Oklahoma. As she was driving, Yarbrough saw what she thought was a person jump in front of her car. Fearing that she may have struck a pedestrian, Yarborough stopped her car, turned on her emergency flashers, and rolled down her passenger window to listen. At that point, a man opened the passenger door and attempted to get in the car with a gun in his hand. Yarbrough unbuckled her seatbelt and rolled onto the road in an attempt to escape. The next thing Yarbrough remembers is trying to crawl away, knowing that she had been shot.

Sherry Morgan, happened to be driving on the same road that morning coming from the opposite direction. Morgan saw Yarbrough's car and, as she got closer, saw Yarbrough lying in the street screaming, "Help me. Don't leave me. Help me." (Trial Tr. at 133.) So Morgan stopped to help but a husky, older man, who Morgan described as about six feet and one or two inches in height, appeared at her window shouting, "Get out of here. Leave. Get out of here." (Id.) Morgan started to drive off but in her rear view mirror she saw the man shoot Yarbrough three times at close range. When she got to the top of the hill, Morgan called 911.

Paramedic Charles Vetters arrived to find Yarbrough very pale with no radial or femoral pulse but still conscious. Yarbrough told Vetters that she had been shot. Vetters asked if she knew who shot her, to which Yarbrough responded twice that it was Sargent.

2

When Yarbrough arrived at the emergency room, another medic asked her if she knew who shot her. Yarbrough again responded that it was Sargent, though this time she explained that he was an ex-boyfriend against whom she had a victim's protective order.

Apparently, Yarbrough and Sargent had a tumultuous relationship. The two dated about two years before this incident, from December 2004 until June 2005. Yarbrough was receiving social security benefits at that time due to a mental disability, and in early 2005, Yarbrough designated Sargent as the payee of those benefits. Yarbrough again became employed in June 2005, so she assumed the payments stopped then. Later Yarbrough learned that Sargent had in fact continued to receive checks. So Yarbrough confronted Sargent and demanded that he pay the money back or she would report the matter to the Social Security Administration. Sargent acquiesced and signed a piece of paper saying that he would pay Yarbrough the $6,000 in question from the proceeds from the sale of his home.

A few months after that confrontation, Yarbrough received a letter, which had a poem stating that unless "love bloomed" between Sargent and Yarbrough, "everything [Yarbrough] love[d would] wither and die." (Id. at 48.) Over the next few months, Yarbrough found five of her chickens beheaded and roses that she planted suddenly dead as if sprayed with chemicals. Yarbrough returned home from church one day to find Sargent in her home. When she tried to get away, Sargent followed her, brandishing a gun and threatening to shoot her. The following day, Yarbrough received a victim's protective order.

When the victim's protective order was issued against him, Sargent lost his job because both he and Yarbrough worked at the same place. Sometime after that, Sargent called an old co-worker and asked how everyone would feel about him returning to work. The co-worker explained that the victim's protective order prevented Sargent from going back to work, and Sargent responded that the victim's protective order was "no big deal" and that "something bad was going to happen." (Id. at 141.)

Based on this shooting, Sargent was convicted in an Oklahoma state court of shooting with intent to kill, unauthorized use of an automobile, stalking, and violating a protective order, then sentenced to twenty-seven years' imprisonment. Sargent appealed to the Oklahoma Court of Criminal Appeals, which affirmed his conviction and sentence. Sargent then filed for post-conviction relief in the state district court, which denied relief. That denial of post-conviction relief was upheld on appeal to the Oklahoma Court of Criminal Appeals. So Sargent proceeded to filed a habeas petition under 28 U.S.C. § 2254 in federal district court.

In his federal habeas petition, Sargent argued that there was insufficient evidence to uphold his conviction, that his sentence was excessive, and that he was denied effective assistance of counsel at trial and at appeal. The magistrate judge to whom the matter had been referred recommended denying habeas relief, and the district court eventually adopted that recommendation. Sargent now seeks a COA from this Court to appeal the dismissal of his habeas petition.

4

## ANALYSIS

A federal circuit court does not have appellate jurisdiction to consider the merits of a § 2254 habeas petition until a COA is issued. 28 U.S.C. § 2253(c)(1)(A). A COA may only be issued if the petitioner makes a "substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). To satisfy this burden, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Although a petitioner seeking a COA does not bear the burden of proving that his habeas petition will succeed on the merits, he "must prove something more than the absence of frivolity or the existence of mere good faith." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (internal quotation marks omitted). Additionally, although we construe pro se applications for a COA liberally, Hall v. Scott, 292 F.3d 1264, 1266 (10th Cir. 2002), a petitioner's pro se status does not relieve him of his burden to make a substantial showing of a constitutional violation.

Sargent fails to carry his burden in this case. While Sargent made a number of arguments before the district court, in his application for a COA to this Court, Sargent claims only one constitution violation: insufficient evidence. Sargent argues that Yarbrough's testimony should have been disregarded because of her mental illness. Further, Sargent argues that there are inconsistences in Yarbrough's timeline of events.

5

"Evidence of guilt is sufficient if after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Diestel v. Hines, 506 F.3d 1249, 1267 (10th Cir. 2007) (internal quotation marks omitted). After reviewing the evidence, the federal magistrate judge concluded that "the decision of the Oklahoma Court of Criminal Appeals is neither contrary to nor an unreasonable application" this standard, and we cannot disagree. Yarbrough's testimony about the shooting was sufficient with the other corroborating evidence to support Sargent's conviction. While Yarbrough admittedly suffers from a mental illness, she testified about her illness candidly and was cross-examined about it. It was for the trier of fact to resolve any dispute about her credibility based on her mental illness. Given the deference owed under AEDPA to the Oklahoma Court of Criminal Appeals' ruling, no reasonable jurist could debate that the district court's decision on this issue was correct. Thus, we deny Sargent's application for a COA and dismiss this appeal.

## CONCLUSION

For the foregoing reasons, we GRANT IFP status but DENY Sargent's application for a COA and DISMISS this appeal.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

6